Bradley, J.
The purposes and term of the partnership beween the parties were designated in the articles of co-partnership executed by them. They were architects, and the business in view was that of their profession. The term of the partnership was three years from January 1, 1882. And the place of business, Rochester, N. Y
The defendant to give his whole time to the business. The plaintiff to beat liberty to have an office in New York, which should have no relation to the firm, and give as much time to it as he should see fit. Contracts for work on hand at the commencement of the term should be divided and arranged as the parties should agree. And the net proceeds of the new business of the Rochester office be so divided that the defendant should have sixty per cent and the *285 plaintiff forty per cent of them. Books of accounts of the business to be kept, and all moneys divided when received, as far as possible. And at the expiration of the partnership if either one continue business at Rochester he should finish all contracts, and render to the other party forty per cent of the net proceeds. And if both continue business there the division should be equal.
The plaintiff had for several years been engaged in the business of his profession as an architect, at Rochester.
The defendant came there about the time the articles were made, with a view to the partnership. The plaintiff contemplated opening an office in New York city, and establishing a business for himself there, and giving his attention to it; and of having the firm take the good will of his business at Rochester, and conduct it under the management of the defendant. The plaintiff did go to New York early in the year 1882, and remained there most of the time thereafter.
The defendant carried on the business in the name of the firm, and in the office which had been rented by the plaintiff, until the 1st of August, 1883, when he rented another office and assumed to do the business ostensibly in his own name. The parties had a settlement of their accounts the 1st of January, 1883, and none thereafter. And upon the-trial of this action it was contended, on the part of the defendant, that there was nothing due the plaintiff, but, on the contrary, that the expenses by him incurred exceeded his receipts of the business, and that there was a balance due from the plaintiff to him on the accounting. The defendant’s account, as presented by him, tended to show such result in the view taken of it, and urged by his coun-. sel at the trial and here. There is a controversy about an item of $1,100, received by the defendant from H. H. Warner.
The question is whether that can be treated as a payment to him on account of the construction of a building for Warner, of which the firm had the architectural supervision. The firm, as such,-had the superintendence of a building for him, at the agreed commission of two and a half per cent of its cost
About the 1st of October, 1883; the defendant made out a written statement purporting to be an account of the estimated cost of the construction, and of the moneys received from Warner on account of such commissions, which left a balance of $151.52 unpaid.
This balance was then paid by Warner, and receipt given by the firm and in its name signed by the plaintiff, by its terms in full for architectural work on the building to its completion, and of all demands. In this statement the cost of the structure was estimated at $206,000. Afterwards *286 the plaintiff called upon Warner, or the clerk naving charge of his business for money. The latter says he called on him and “said he would like to get a little money;” that he spoke to Warner about it and he told him to give the defendant “what he wanted.” And this clerk gave to the defendant the checks of H. H. Warner & Co., of November 5, 1883, $100; December 3, 1883, $200; January 3, 1884, $200; February, 1884, $200; April 1, 1884, $300; June 26, 1884, $100, making together $1,100.
And for the first four sums, amounting to $700, receipts made by the defendant to H. H. Warner & Co., corresponding in dates and amounts with those four checks, were produced in evidence, and they, by their terms, severally represent the moneys received as loans.
No receipts for the additional $400 appear. The plaintiff was proceeding to obtain and give evidence of the cost of the Warner building, when it was conceded by the defendant’s counsel for the purposes of the trial that its cost exceeded the sum of $250,000. This made the commissions of the architects at the stipulated rate of $1,100 more than the amount represented by the statement as made and receipted in October, 1883.
If the moneys amounting to that sum were paid to the defendant on account of that work, they properly belong in the partnership account, otherwise not..
Without reference to characterizing circumstances, this question presents an apparent difficulty arising out of the receipt given in full for the services of the firm attending the construction of the building, inasmuch as Warner is not a party here, and, therefore, not charged with the adjudication in that respect. But notwithstanding the settlement of October, 1883, and the form given the transactions of the furnishing and receipt of the money, there is evidence from which, and the inference derivable from it, that permitted the referee to conclude as he did, that the money was paid to and received by the defendant on account of the architectural services in the construction of the Warner building before mentioned.
Warner evidently had the means of ascertaining its cost, and it was in the line of the defendant’s duty, as a member of his firm, to be advised, or to have the requisite means of information (and he does not say he had not) of the cost of the building, as the compensation was measured by it; while the plaintiff had been absent, and given the matter no personal attention. He may at the time have assumed that the estimate in the defendant’s statement of the account of it was correctly and fairly made, when in fact it was $44,000 less than the actual cost.
The defendant had not been called upon to repay the *287 money to Warner, and the latter says he did not know anything about the defendant’s having the money until his attention was called to it during the trial.
The plaintiff says that at or about the time the receipt of October, 1883, was made, he asked Warner if he intended to pay Rogers any more on account of the building, and he evaded the question, and that when asked if in case he did pay the defendant more he would pay the plaintiff his portion, he answered in the negative, and said he would pay the defendant what was necessary to have the building finished. This was to some extent contradicted by Warner.
A considerable portion of this money was received by the defendant before the structure was completed. It was finished in March, 1884. There are other circumstances bearing upon the question. The defendant became dissatisfied with his relation of partner as early as August, 1883, and evinced some purpose not to recognize its existence further. His relations with Warner were very friendly, while those of the latter were not remarkably so with the plaintiff. While these perhaps standing alone are not very important facts, they are given some significance by other circumstances appearing in the evidence from which as a whole, the referee may well have concluded that there was no purpose of Warner to require repayment, or of the defendant to repay the $1,100, and in view, also, of the fact that it made just the balance due upon the contract for the services of the firm, the inference was fairly justified that it was deemed a payment on that account. And this is strengthened somewhat by the failure of the defendant, when permitted to do so, to make a satisfactory explanation of the circumstances of his estimate of the costs, as per his October statement, and of the receipt of the money subsequently obtained from Warner.
The form given to the transaction by the receipts made by him is not conclusive upon the nature of the transaction.
The plaintiff had the right to share in compensation for the architectural services of the defendant through to the completion of the building. And Warner was required by the contract to pay the firm the stipulated compensation based upon its entire cost, which was- not done until the $1,100 were paid. We see no occasion ppon the conflicting evidence to interfere with the conclusion of the referee on this question of tact.
The defendant complains of the rejection by the referee, of some of the items of disbursements and expenses which he claims were legitimately made and incurred in the business of the firm.
The referee disallowed quite a number of sums claimed *288 by the defendant and entered as such upon his account produced. It seems that the defendant kept no books in which he regularly made entries, after the 1st of August, 1883. And this may have arisen out of the purpose not to continue the partnership from and after that time.
Some of the entries made by him in the account embraced items which had no relation to the business of the firm. And when his attention was called to one of them he remarked, in effect, that at the time it was made he did not deem the plaintiff his partner. The most of the rejected items were indefinite, entered as sundries, or as short of cash, and he was unable to give any definite explanation of them other than that he kept the items on papers, and as pocket memoranda, until the end of the month, when he says he brought them together and entered them in his account. No vouchers or original memorandum entries were produced.
The referee was justified in rejecting those for indefiniteness and uncertainty as to character. Methodist Episcopal Church v. Jaques, 3 Johns. Ch., 77.
Also, charges entered for expenses of a trip to Buffalo, and a trip to New York, were so questionable upon the evidence, the conclusion of the referee was permitted, that they should be disallowed. And some were rejected because they were not proper charges against the firm. And for the reasons given by the referee, we think he was justified by the evidence in excluding the portion which he did disallow of the charges for,alleged payments to his son for services. These and the other matters of the defendant’s account which were not allowed, came within questions of fact presented by the evidence, mostly given by the defendant himself. And we cannot say that his conclusion in any of those respects was against the weight of the evidence as. it appears to have been presented. at the trial, and as he was at liberty to treat it. And we find no error in the conclusions reached by him, other than in stating the amount of the defendants receipts since January, 1885, which he finds were. $2,164.95. By a careful examination of the evidence we are not able to find.that after January 1, 1885, he received any money on account of the firm, other than from American Express Company, $1,164.95; from Tichnor & Jacobi, $500 and $12,0, making together $1,784.95, which is $380 less than that so found by .the referee, and conclude that he was in error to that extent. This reduces the defendant’s receipts, as found by the referee, to $9,209.89, and should reduce the recovery $152. No exception, other than that to the statement of the receipts of the defendant after January 1, 1885, seems to have been well taken. And we *289 think with that exception the conclusion of the referee is supported by the evidence.
The judgment should be reversed and a new trial ordered, costs to abide the event; unless the plaintiff stipulate to deduct from the recovery $152, and in that event the judgment be so reduced, and as so modified, affirmed, without costs of this appeal to either party.
Haight and Lewis, JJ., concur.